# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**THOMAS DALE MORGAN**                                                                            **PLAINTIFF**

v.                                                                                                                                      No. 2:09CV97-B-A

**CORRECTIONS CORPORATION**
**OF AMERICA, INC., ET AL.**                                                      **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Thomas Dale Morgan, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. For the reasons set forth below, all the Morgan's claims except that the defendants purposefully caused injury to his wrists will be dismissed for failure to state a claim upon which relief could be granted. The case will then be transferred to the United States District Court for the District of Arizona.

## Factual Allegations

According to the plaintiff, California prisons have several classifications of prison exercise yards: Hard Yards, Soft Yards, Honor Yards, and Special Needs Yards. Hard Yards house inmates who hold a high degree of racial animosity, who participate in extremely violent gang activity, and who participate in "prison politics." Soft Yards are for inmates willing to adopt a peaceful prison existence and get along with other inmates – and who have had little or no gang activity. Honor Yards are for inmates who participate in no "prison politics" whatsoever, who respect everyone (including guards and staff members). Interracial mingling is possible in an Honor Yard, and assaults almost never happen there. Special Needs Yards are

protective custody compounds for transgender inmates, sexual deviants, and inmates otherwise difficult to place (such as informants and former law enforcement officers).

Once an inmate is placed in a Soft Yard, Special Needs Yard, or Honor Yard, he cannot return to a Hard Yard without being victimized, attacked or killed. Prison gangs control the inmates in most General Population facilities. Morgan was housed on a "Soft Yard" for several reasons: (1) he is not a gang member, (2) he is interracially married, (3) he has suffered at the hands of both the Woods and Skin Head gangs, which are white supremacist in nature, and (4) he is considered effeminate and soft in nature.

Morgan was transferred to California's out-of-state prison program to the Corrections Corporation of America facility in Eloy, Arizona, where he received threats from Hard Yard inmates because of his previous placement in a Soft Yard. Morgan informed the prison staff of the threat and identified the aggressors, who were then moved to a different compound. Morgan then received orders to move into the compound housing his attackers. The order was canceled, but Morgan was nonetheless moved into the compound, where he was attacked and badly beaten. He identified most of his attackers and was placed on administrative segregation on December 4, 2008.

He was transferred to the Tallahatchie County Correctional Facility in Tutwiler, Mississippi, on May 7, 2009. On the trip from Arizona to Mississippi he was shackled to the vehicle and another inmate, and the jostling and movement of the vehicle and inmates injured Morgan's wrists. He alleges that the injury is intentional – and even has a name within Corrections Corporation of America – "bus therapy." Morgan immediately informed prison staff of his safety concerns regarding his placement in the general population and was placed in

administrative segregation pending investigation of his claims. On June 4, 2009, he received orders to move to the general population. He refused due to fear for his safety. He has received several rule violations arising out of his refusal to enter the general population. Morgan remained in administrative segregation until his transfer once again to the Corrections Corporation of America facility in Eloy, Arizona.

## General Conditions of Confinement

Morgan makes the following allegations regarding the general conditions of his confinement: (1) he receives daily taunts from inmates; (2) food delivered by other inmates appears to be adultered – or has smaller portions that usual; (3) due to his placement in Administrative Segregation he stays on lockdown 23 hours per day; (4) he is handcuffed whenever he is escorted out of his cell; and (5) he only receives three cold showers per week. As discussed below, none of these claims has merit, and they will be dismissed for failure to state a constitutional claim.

The Eighth Amendment provides "protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.1989), *cert. denied*, 493 U.S. 969 (1989)(citation omitted). "Inmates cannot expect the amenities, conveniences, and services of a good hotel." *Id.* at 849 n.5 (citation omitted). It is clear that prison officials have certain duties under the Eighth Amendment, but these duties are only to provide prisoners with "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care . . . ." *Woods v. Edwards*, 51 F.3d 577, 581 n.10 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A court must consider the "totality of the circumstances" when analyzing a claim

arising out of the general conditions of confinement. *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990).

### Daily Taunts from Other Inmates

Morgan alleges that other inmates taunt him on a daily basis. First, 42 U.S.C. § 1983 only protects Morgan from acts or omissions carried out "under color of state law." As other inmates are not state actors, this claim should be dismissed. To the extent that Morgan argues that prison guards must protect him from taunting, this claim also fails. Verbal abuse by prison guards does not give rise to a cause of action under § 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993), *Siglar v. Hightower*, 112 F.3d 191(5th Cir. 1997). Given that direct verbal abuse by prison guards does not state a claim, then failure of prison guards to protect the plaintiff against verbal abuse from others must also fail. For this reason, Morgan's claim that inmates have taunted him will be dismissed.

### Adultered Food, Meals with Small Portions, and Three Cold Showers Per Week

Morgan claims that when inmates deliver his food, it is occasionally altered or consists of smaller portions than normal. He has not, however, alleged that he has been injured by the altered food – or smaller portions. Similarly, Morgan has not alleged that the defendants' decision to limit him to three cold showers per week has harmed him. These claims do not establish that Morgan was denied food or the opportunity to clean himself (basic human needs) for an unreasonable period of time. *See Woods*, 51 F.3d at 581. As such, these allegations will be dismissed for failure to state a claim.

**Use of Restraints During Escort Within the Prison,
Lockdown for 23 Hours Per Day**

Morgan claims that use of handcuffs while he is escorted within the facility is unnecessary, as is his placement in lockdown for 23 hours per day. Prisoner classification and housing restrictions are matters squarely within the "broad discretion" of prison officials, "free from judicial intervention" except in extreme circumstances. *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990). In addition, prison policy or practice will not be found unconstitutional as long as it is reasonably related to a legitimate penological objective of the facility, *Hay v. Waldron*, 834 F.2d 481, 487-87 (5th Cir. 1987). Morgan has not established that extreme circumstances exist regarding these two issues that would require judicial intervention. As such, these allegations will be dismissed for failure to state a constitutional claim.

**Denial of Access to the Courts**

Morgan alleges that on many occasions he has not had access to the prison law library and that his grievances and requests for legal materials have been ignored. Prisoners have the right of access to courts, including having the "ability . . . to prepare and transmit a necessary legal document to court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (quoting *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993), *cert. denied*, 510 U.S. 1123 (1994)). This right is limited to allow prisoners the opportunity to file nonfrivolous claims challenging their convictions or conditions of confinement. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). "Interference with a prisoner's right to access to the courts, such as delay, may result in a constitutional deprivation." *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (citations omitted). However, "[a] denial-of-access-to-the-courts claim is not valid if a litigant's position is

not prejudiced by the alleged violation." *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir. 1992), *cert. denied,* 504 U.S. 988 (1992) (citing *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988)). It is only when a prisoner suffers some sort of actual prejudice or detriment because of the alleged denial of access to the courts that the allegation becomes one of a constitutional nature. *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993); *see Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987). A plaintiff must show real detriment – true denial of access, such as the loss of a motion, the loss of a right to commence, prosecute or appeal in a court, or substantial delay in obtaining a judicial determination in a proceeding. *See Oaks v. Wainwright*, 430 F.2d 241 (5th Cir. 1970).

In this case, Morgan has not alleged that he has suffered actual prejudice to his legal position in any case. As such, these allegations will be dismissed for failure to state a claim upon which relief could be granted.

**Failure to Protect**

Morgan claims that he fears for his life and should he be transferred to the general prison population because he was previously placed in a "soft yard," that he feels stress because he believes the safety and security protocols are insufficient. "The Eighth Amendment affords prisoners protection against injury at the hands of other inmates" *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted). Deliberate indifference is the standard for analyzing a convicted prisoner's claim that prison officials failed to protect him. *Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1396 (5th Cir. 1995).

To meet this standard, the official must know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). In the present case, Morgan believes that he would be in danger should he be housed in the general population at the Tallahatchie County Correctional Facility or any other Corrections Corporation of America facility. He alleges that the possibility of his move to the general population causes him anxiety and stress. For this reason, he refuses to move to the general population when directed and has been placed in Administrative Segregation. He would prefer placement in a "soft yard," but the Tallahatchie County Correctional Facility (where he was incarcerated when he filed this suit) does not have "soft yards." He was recently moved to a Corrections Corporation of America facility in Eloy, Arizona. It is unclear whether that facility has the "soft yard" housing Morgan seeks. Morgan has offered no more than his opinion that he would be in danger in the general population. As Morgan has been moved to an out-of-state facility, these claims will be dismissed without prejudice to his ability to raise them in federal court in Arizona should he choose to do so.

## Denial of Medical Care

Morgan alleges that the defendants provided him with inadequate medical care for wrist injuries he received during transport from Arizona to Mississippi. Morgan claims in his First Amended Complaint that his "injuries [were] only superficially treated with medication to reduce the swelling and pain." Morgan complained of back pain and received analgesic cream. He also complained of infection of cuts in his wrists from handcuffs during transport. He was treated with triple antibiotic ointment.

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of

prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may knowledge of substantial risk of serious harm be inferred by a court from the obviousness of the substantial risk. *Id*. Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

Morgan's claim is nothing more than his disagreement with the treatment he received. Analgesic cream is commonly used to treat back pain, and triple antibiotic ointment is commonly used to treat infected cuts and scrapes. These medications are well-known and widely available over-the-counter treatments for the very problems affecting Morgan. As stated above, mere

disagreement with medical treatment does not give rise to a constitutional claim for denial of medical care. As such, this allegation will be dismissed for failure to state a claim upon which relief could be granted.

### Denial of Due Process Regarding Punishments Administered for Refusal to Move to the General Population

Morgan also complains that he has been punished for refusing to move to the general prison population as directed. He complains of the following punishments: (1) placement in Administrative Segregation, and (2) denial of all privileges. This is simply a claim that the defendants denied Morgan his right to due process before receiving punishment.

Under *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), the court holds that Morgan has failed to state a claim implicating the Due Process Clause or any other constitutional protection:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause [, but] these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* 115 S. Ct. at 2300 (citations omitted). In the *Sandin* case, the discipline administered the prisoner was confinement in isolation. Because this discipline fell "within the expected parameters of the sentence imposed by a court of law," *id.* at 2301, and "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," *id.*, the Court held that neither the Due Process Clause itself nor State law or regulations afforded a protected liberty interest that would entitle the prisoner to the procedural protections set forth by the Court in *Wolff v. McDonnell*, 418 U.S. 539, 41 L. Ed. 2d 935 (1974). *See also Malchi v.*

*Thaler*, 211 F.3d 953, 958 (5th Cir. 2000) (holding prisoner's thirty-day loss of commissary privileges and cell restriction due to disciplinary action failed to give rise to due process claim). The punishment imposed for Morgan's refusal to enter the general population was placement in Administrative Segregation[1] and denial of all privileges. This is similar to the punishment imposed in *Sandin*, and does not rise to the level of an "atypical, significant deprivation;" instead, it falls "within the expected parameters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). As such, Morgan's claim that he received punishments without due process of law will be dismissed for failure to state a constitutional claim.

### Housing of "Soft Yard" Inmates Within Corrections Corporation of America

Morgan alleges that the policy of housing "soft yard" inmates with "hard yard" inmates violates the Eighth Amendment prohibition against cruel and unusual punishment. In addition, Morgan alleges that the defendants frequently blame the victims of assault as "mutual combatants" and administer the same punishment to victims and attackers, alike – leaving the "soft yard" inmates at the mercy of those housed in "hard yards." He argues that the unions of the corrections employees working for the State of California's Department of Corrections and Rehabilitation ("CDCR") ensure that the most violent and troublesome inmates in California are sent to private prisons (such as CCA) to drive up the number of violent incidents in private prisons – thus making union-controlled California prison staff look better by comparison.

---

[1] For the purposes of this opinion only, the court will assume that Morgan was placed in Administrative Segregation as a punishment. Normally, Administrative Segregation, as the name implies, is reserved for holding inmates in isolation for reasons other than punishment – usually safety and security.

Morgan alleges that, as part of that larger conspiracy, on June 18, 2009, Lt. Walls took Morgan into a room to hold a teleconference with Lt. Wong, an agent of the CDCR. Morgan alleges that during the teleconference Walls and Wong threatened him with forced placement in the general population – and that refusal to go would lead to far worse consequences than a beating. Walls and Wong acknowledged that Morgan had been placed on a soft yard, but told him that their investigation did not reveal that he was in danger – that his fears, without more, would not stop his transfer.

Despite his fears, Morgan was not forcibly transferred to the general population and has been moved to a corrections facility in Arizona. Similarly, he has not been transferred to a facility solely for hardened inmates for his refusal to move the general population. Nor has he been beaten or suffered any physical injury whatsoever. Verbal abuse by prison guards does not give rise to a cause of action under § 1983. *See Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993), *Siglar v. Hightower*, 112 F.3d 191(5th Cir. 1997). Morgan has suffered verbal abuse from prison guards, and he has not suffered a transfer to the general population or to a more dangerous facility. For these reasons, Morgan's claims regarding *his* proper placement – "soft yard" or general population – must be dismissed for failure to state a claim. However, Morgan's claim regarding the *policy* of CDCR and CCA regarding placement of "soft yard" inmates in "hard yards" or the general population does state a cognizable claim because, based upon Morgan's allegations, the policy could well lead to serious physical injury. However, as Morgan has been transferred to a CCA facility in Eloy, Arizona, the court will transfer this claim to the United States District Court for the District of Arizona for resolution.

### Excessive Force: Knowingly Subjecting Morgan
### to Wrist Injury During Transport

Morgan claims that during his transport from Arizona to Mississippi the defendants intentionally caused injury to his wrists by subjecting him to "bus therapy," a practice of cuffing inmates to each other and to the bus itself during long drives, and that the "bus therapy" cut into his wrists and caused an infection. These allegations state a claim for relief under a theory of excessive force and will proceed. However, as Morgan has been moved back to Arizona, this claim will be transferred to the United States District Court for the District of Arizona for resolution.

In sum, all of the plaintiff's claims will be dismissed except: (1) his claim that the policy of Corrections Corporation of America to house "soft yard" inmates with "hard yard" inmates fails to protect him from assault, and (2) his claim of excessive force regarding the defendants' decision to cuff inmates to each other and to the bus during transport from Arizona to Mississippi. A judgment consistent with this memorandum opinion will issue today.

**SO ORDERED,** this the 23rd day of April, 2010.

/s/ Neal Biggers

NEAL B. BIGGERS
SENIOR U. S. DISTRICT JUDGE